## MOTORMAN INJURED BY CARELESSNESS OF OTHER EMPLOYEES OF THE COMPANY.

Court of Appeals for Hamilton County.

THE CINCINNATI TRACTION COMPANY v. MARTIN PIERMAN.*

Decided, April 4, 1914.

*Negligence—Disabled Traction Car Operated Contrary to Rules of the Company—Collision with Another Car—Motorman Without Fault on His Own Part Injured—Fellow-Servant Rule Not Applicable.*

1. Neither an inspector nor a barn foreman, employed by a traction company, can be classed as fellow-servants of an injured motorman, for whose acts the company would not be liable.
2. Where in obedience to the order of an inspector a disabled car which could not be controlled except by use of the reverse current, was being taken to the barn in a manner contrary to the rules of the company, alleged negligence thereby on the part of the conductor of the disabled car is not available in an action by an injured motorman who was operating another car and was without fault.

*Miller Outcalt,* for plaintiff in error.
*Philip & S. C. Roettinger,* contra.

JONES (Oliver B.), J.; JONES (E. H.), J., and SWING, J., concur.

Plaintiff below was a motorman employed by the defendant below, and had prepared to take a car out of its car barn near Eighth and Depot streets, for its regular trip when he was ordered by the inspector to stop just inside the car barn and hold himself in readiness to proceed after the inspector had brought in a car. The car which was being brought in had become disabled down in the city and its motorman and conductor had, under the instructions of the inspector in charge at that point, undertaken to bring it into the car barn on its own power although its brake had been entirely disabled by the accident so

*Affirmed without opinion, *Cincinnati Traction Co.* v. *Pierman,* 90 Ohio State.

that it was utterly useless and the only means of checking the car was by the use of the "reverse" by the motorman. This means of retarding or stopping the car was sufficient while the current was on, and ceased to operate entirely whenever the trolleys became disengaged from the trolley wires and the current was thus disconnected.

Rules 17 and 18 of the general rules for a conductor and motorman of the defendant company were introduced in evidence, being as follows:

"17. *Reporting Defects*—Conductors and motormen will report at first station of the company they first meet, any defect in car, track, wires or poles which needs immediate attention.

"Should same be in a dangerous condition, the crew will not leave the point of danger until relieved by the crew of the next car arriving, or by other employees of the company.

"18. *Disabled Cars.*—If a car becomes disabled and if repairs can not be made without unnecessarily blocking the street, the crew must arrange to have the nearest available car take disabled car to carhouse, or such other place as will avoid obstruction."

When this car became disabled an inspector was called who undertook its management. It seems that he used another car to straighten it out and start it towards the barn by towing it, but as above stated he instructed its crew to proceed to the barn without any other car, taking it only on its own power and without any means of braking other than the reverse current.

It appears that when this disabled car reached Eighth and Depot streets another inspector was there in charge. The usual method of taking the cars into the barn at that place was to back them in. The level of the barn being five or six feet lower than the street above, the cars would run down easily, and the barn foreman who was in charge there would direct the throwing off the proper switch to carry the car into the track on which it was intended to leave it. The barn foreman was present and in charge, at this time, and a boy who was under his directions had thrown the switch. The disabled car, which was a heavy two truck car of the modern type, running backward was con-

trolled by the motorman by using his reverse current until the trolleys either flew off or were taken off the wires by the conductor, and the reverse current from that time failing to be effective the car ran away, and, because the wrong switch had been turned, ran into the track on which the car about to be operated by the plaintiff was standing, resulting in a collision, in which the plaintiff below received severe injuries.

The defendant below filed a demurrer to the amended petition, which was overruled. This demurrer was based upon the claim that the petition showed that the injury was caused by a fellow-servant, and the same issue was afterwards raised by the answer, and is pressed here as the main ground of error.

While plaintiff himself testified that he saw the conductor of the disabled car apparently manipulating the trolleys as though he had pulled them off the wires, he stated that he could only see the car a matter of eight or ten feet away as it turned into the track or curve, and there is other testimony tending to show that the trolleys might have jumped off the wires thus breaking the current, it appears that it was necessary for the conductor to manipulate the trolleys because of the complex nature of the overhead wiring at that point; so it does not follow that the entire proximate cause of the injury was merely the disconnection of the current by the conductor, or that such disconnection was not necessary in order to pass the car into the barn. But further negligence is shown in the management by the company in the manner of adjusting the switch, as it was not intended that this disabled car should enter into the track on which plaintiff's car was standing, as that track entered upon an opening not sufficiently large to permit the entrance of as large a car as this disabled one.

In the opinion of the court, however, the real cause of the injury was in undertaking to manipulate a car in such a condition without having it under sufficient control. Rule 18 seems to have been violated by the employees of the traction company, and its inspectors were responsible for such violation. Neither the inspectors nor the barn foreman, who was responsible for the placing of the switch, would be classed as fellow-servants

of the plaintiff, for whose acts the defendant would not be liable. And indeed it might be a question whether, if the negligence were alone that of the conductor on this disabled car, the fellow-servant doctrine could be a defense, because of the unsafe condition of such car, in view of the terms of Section 6244, General Code.

Plaintiff was entirely without fault and was acting under the orders of his superior, and the ruling of the court below on the demurrer was correct.

Plaintiff in error claims that the court below erred in that part of its general charge relating to the proximate cause: The language employed might have been more clear and specific, but we do not find that it resulted in prejudicial error to the defendant below, and a careful consideration of the entire record fails to disclose any prejudicial error.

The judgment is therefore affirmed.